James O. TRIBBETT, Sr., et al.,
Plaintiffs,

v.

CHICAGO UNION STATION CO. et al.,
Defendants.

No. 72 C 445.

United States District Court,
N. D. Illinois, E. D.

Nov. 22, 1972.

R. T. Cubbage, and John L. Pilon, Chicago, Ill., for plaintiffs.

Robert A. Maloney, Palatine, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the Defendant's Motion to Dismiss the Complaint.

The basis of this action involves alleged violations of protective arrangements for employees which have been established under the Rail Passenger Service Act, 45 U.S.C. § 565, and an alleged failure to follow the opinion and award rendered by arbitration. The named plaintiffs are eleven former Railway Terminal employees of the Chicago Union Station Company whose jobs were terminated by the advent of the National Railroad Passenger Corporation (AMTRAK) on or about May 1, 1971. The defendants are: the Chicago Union Station Co., hereinafter CUS; D. M. Baughman, Manager of CUS; the Burlington Northern Inc.; and other Rail Transportation Companies, the identities of which are not presently known.

Plaintiffs' amended complaint alleges jurisdiction pursuant to the Railway La-

bor Act, Section 3, First (p), 45 U.S.C. § 153 First (p). The plaintiffs seek a mandatory injunction order directing defendants CUS and D. M. Baughman to honor Referee Dolnick's Opinion and Award through the payment of the approximate sum of $16,832 to each of the named plaintiffs, which represents separation pay. The plaintiffs also seek the cost of maintaining this action.

The instant cause of action arose from the following factual setting:

1. The United States Congress, as a result of the decline in passenger service, enacted Public Law 91–518, now 45 U.S.C.A. § 501, et seq., which has the stated purpose of forming a rail passenger corporation for providing modern, efficient intercity rail passenger service.

2. Section 543 of the Act provides that a corporation for profit be formed to provide intercity passenger service. It was not to be an agency or establishment of the United States Government.

3. Section 561 of the Act states that on or before May 1, 1971, the corporation is authorized to contract with railroads to relieve them of their responsibilities for providing intercity rail passenger service.

4. Section 565 of the Act provides for protective arrangements for employees who may be affected by discontinuances of intercity rail passenger service.

5. The National Railroad Passenger Corporation, hereinafter referred to as Amtrak, was to set up a basic rail system, and railroads contracting with it were allowed to discontinue their own passenger service on May 1, 1971. Thereafter, pursuant to the contract, the railroads were to provide to Amtrak, for a fee, the servicing and operating of the passenger trains.

6. On April 16, 1971, numerous railroads in the country, including the Burlington Northern, executed a

contract entitled "The National Railroad Passenger Corporation Agreement," more commonly known as the Amtrak Agreement. The CUS was not a party to the agreement.

7. As required by § 565(b) of the Act, there was attached to the Amtrak Agreement an Appendix C–1. This Appendix provided protection for railroad workers who were affected by the May 1, 1971 changes, and the start-up of Amtrak. Also as required by § 565, this Appendix C–1 was certified by the Secretary of Labor that the labor protective provisions contained therein afforded affected employees fair and equitable protection by the railroads.

8. On May 1, 1971, Amtrak operations commenced out of CUS and certain passenger trains were discontinued and the handling of mail was changed on or about that date, affecting the employment status of certain employees, including the named plaintiffs in this action, most of whom had been mail handlers.

9. In May or June of 1971, the plaintiffs herein were offered employment by the Burlington Northern and they refused same.[1]

10. Subsequent to May 1, disputes arose between CUS employees and CUS regarding their employment status and rights under the Amtrak Agreement, Appendix C–1. On May 18, 1971, the Union representing the CUS employees (the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, hereinafter referred to as the BRAC) by telegram, requested the National Mediation Board in Washington D. C., to appoint a neutral referee as provided in Article 1, Sec. 4(A) of Appendix C–1 of the Amtrak Agreement, for purposes of arbitrating conditions to be included in an implementing agreement between CUS and BRAC.

11. CUS objected to the appointment, taking the position that CUS was not a party to the Amtrak Agreement and that the provisions therein requiring the parties to enter into an implementing agreement had no force and effect on CUS.

12. The National Mediation Board appointed a referee, Mr. David Dolnick, and he subsequently issued his first award on August 23, 1971, which, in essence, stated that he had jurisdiction with the resultant right and power to direct CUS to enter into an implementing agreement with the BRAC. In his second opinion and award of October 25, 1971, he directed the CUS and BRAC to enter into an implementing agreement.

The Defendants in support of their Motion to Dismiss the Complaint contend:

1. This Court lacks jurisdiction to hear the present action;

2. Plaintiffs have failed to exhaust the administrative remedy of arbitration; and

3. Plaintiffs' prayer for relief does not contain any request which this Court can act upon.

The Plaintiffs in opposition to the Motion to Dismiss contend that the Railway Labor Act confers jurisdiction on this Court to enter an order directing compliance with Referee Dolnick's award.

This Court is of the opinion that jurisdiction in the Federal District Court

1. In Appendix VIII of the Complaint, plaintiffs appended a letter from the Burlington to plaintiffs' attorney stating that the Burlington had offered comparable employment to the plaintiffs and that therefore any claim which plaintiffs might have for separation pay under Appendix C–1 was negated by their refusal to accept such employment.

is not proper at the present stage of the controversy.

## I. THE FEDERAL DISTRICT COURT DOES NOT HAVE JURISDICTION IN THIS CASE UNDER 45 U.S.C. § 153 First (p)

█ It is well settled that the Railway Labor Act establishes a comprehensive system for disposing of all disputes between railway employees, unions, and railway companies. See Gunther v. San Diego & Arizona Eastern Ry., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); Elgin, J & E Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945); Illinois Central R. R. v. Brotherhood of Railroad Trainmen, 398 F.2d 973 (7th Cir. 1968); Atchison, T. & S. F. Ry. Co. v. Public Law Board No. 296, D.C., 340 F.Supp. 1136 (1972).

█ This controversy stems from the Amtrak Agreement, a private operating agreement between two corporations. This Agreement contains provisions to protect employees who are affected by the implementation of the Agreement and the elimination of certain jobs and services. This Agreement is not a labor or "collective bargaining agreement" between an employer and his employees or their representatives. The Agreement provides for the processing of employment disputes resulting from operations under the contract by such means as arbitration.

While the instant action involves mediation of a railroad dispute by an independent referee selected by the National Mediation Board pursuant to authority created by the Amtrak Agreement, there is no necessity to conclude that this dispute falls within the purview of the Railway Labor Act. This Court is of the opinion that the Railway Labor Act is not applicable because the instant action arose under a private contract involving two corporations. Referee Dolnick in his two opinions and awards carefully avoided any reference to the Railway Labor Act as the foundation for the arbitration. Referee Dolnick clearly indicated that the National Mediation Board received its authority to appoint him upon request of the parties pursuant to the Amtrak Agreement and not under the Railway Labor Act. The Referee stated:

"The undersigned referee was appointed by the National Mediation Board, pursuant to the authority vested in that Board by Appendix C–1, Article 1, Section 4(a), issued by the Secretary of Labor on April 16, 1971, in accordance with the authority granted to him by Public Law 91–518."

In Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees v. Special Board of Adjustment No. 605, 410 F.2d 520 (7th Cir. 1969), a case similar to the instant action, the 7th Circuit held that federal jurisdiction was lacking. That case involved a dispute over the elimination of certain freight handling jobs which resulted from a tri-party agreement between the Union, the Railroad, and a Freight Handling Company. The arbitration of the dispute was conducted by a neutral referee appointed by the National Mediation Board (Special Board of Adjustment No. 605) and an award adverse to the Brotherhood was rendered. The Brotherhood filed a petition for review in the federal district court alleging jurisdiction under 45 U.S.C. § 153 First (q). The Appellate Court in affirming the District Court's summary dismissal of the action based upon the lack of jurisdiction stated:

The plain wording of Section 3, First (q) relates only to statutory boards. The Special Adjustment Board No. 605 is not a statutory board at all but solely the product of a contract between private parties. Board No. 605 is a common law board of arbitration established by parties who happened otherwise to be subject to the Act. *Not every form of arbitration in the railroad industry is subject to the review provisions of Section 3 of the Railway Labor Act.* Even though the creation of Board No. 605 was sanctioned by the Act, it was not a statutory board and therefore not subject

to the review provision of Section 3, First (q). (Emphasis added).[2] *Id.* at 523.

It is clear that in the instant case the arbitration by a neutral referee pursuant to the Amtrak Agreement as opposed to arbitration under the Railway Labor Act does not present a sufficient basis for Federal Court jurisdiction under 45 U.S.C. § 153 First (p). Thus the plaintiffs' complaint has failed to state proper grounds for the exercise of jurisdiction by this Court.

## II. THE PLAINTIFFS HAVE FAILED TO EXHAUST THE ADMINISTRATIVE REMEDIES AVAILABLE UNDER THE RAILWAY LABOR ACT, APPENDIX C–1 PURSUANT TO THE RAIL PASSENGER SERVICE ACT, AND PARAGRAPH 12 OF THE IMPLEMENTING AGREEMENT OF THE REFEREE'S AWARD

In Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L. Ed.2d 580 (1964), the Supreme Court held that a grieved employee must exhaust his administrative remedies before invoking the jurisdiction of the Federal District Court:

"As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress.

\* \* \* \* \* \*

A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already men-

tioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' Teamsters Local v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 7 L. Ed.2d 593." *Id.* at 652, 85 S.Ct. at 616.

See also: Walker v. Southern Ry. Co., 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966); Locomotive Engineers v. L & N Ry. Co., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); Parsons v. Norfolk & Western Ry. Co., 442 F.2d 1075 (4th Cir. 1971); Railway Executives Ass'n v. Atchison, Topeka, and S. F. Ry. Co., 430 F.2d 994 (9th Cir. 1970); O'Mara v. Erie Lackawanna Railroad Company, 407 F.2d 674 (2d Cir. 1968); Slagley v. Illinois Central R. R. Co., 397 F.2d 546 (7th Cir. 1968).

The plaintiffs have failed to pursue arbitration under the Railway Labor Act, 45 U.S.C. § 151 et seq. In addition each plaintiff has failed to exhaust his remedies under the Rail Passenger Service Act and the Amtrak Agreement. Appendix C–1 provided job protection for railroad employees affected by a "transaction", defined as a discontinuance of intercity passenger service. Article III of Appendix C–1 deals with employees in the position of plaintiffs, i. e., terminal company employees as opposed to railroad employees. Article III provides basically that terminal employees are to be entitled to the protection of C–1 to the same extent as railroad employees if they apply for employment

---

2. It is only after the Arbitration Board makes an award that the provisions of First (p) and (q) come into play. Subsection First (p) deals with enforcement of awards; First (q) deals with review of arbitration awards. The jurisdiction of a Federal District Court under (p) and (q) are virtually identical. Since the

arbitration in the instant case is by a nonstatutory board, this Federal Court lacks jurisdiction under 45 U.S.C. § 153 First (p). See Transportation-Communication Employees Union v. Union Pacific Railroad Co., 385 U.S. 157, 162–166, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966).

with each carrier owning the terminal, each carrier using the terminal and Amtrak. Once the employee has done this, he is entitled to the benefits of C–1; however, rights once gained can also be terminated under Article III if the CUS' employee fails, without good cause, to accept comparable employment, which does not require a change of place of residence. All plaintiffs filled out the required applications and all were offered employment with a carrier. Whether the jobs were, in fact, comparable was not raised in plaintiffs' complaint. Plaintiffs have taken the position that, in lieu of employment, they were entitled to separation pay under Article I, Paragraph 7 of C–1 and have demanded same.

Appendix C–1 provides for the arbitration of disputes at Article 1 § 4(a). Referee Dolnick who arbitrated the general dispute between CUS and its employees provided as an award of the arbitration that the parties enter into an Implementing Agreement. Paragraph 12 of the Implementing Agreement sets forth the procedure for contesting the denial of any employee's claim. The provision clearly states that the remedy for those with unresolved claims after initial arbitration (such as the plaintiffs in the instant action) is further arbitration of their specific claim as provided for under Appendix C–1. The plaintiffs have filed their complaint without complying with Paragraph 12 of the Implementing Agreement.

Thus the plaintiffs in the instant action have failed to seek available administrative remedies. Because of this failure, this Court lacks jurisdiction over the present action.

## III. THE ISSUES PRESENTED BY THIS CAUSE OF ACTION INVOLVE A FIELD NOT PECULIARLY WITHIN THE COMPETENCY OF A FEDERAL DISTRICT COURT

Contrary to the assertions of the plaintiffs, the heart of the controversy in this case concerns whether the employment offered to the plaintiffs was comparable under the terms of the Amtrak Agreement. If the proffered employment was comparable, the plaintiffs are not entitled (according to Appendix C–1 and the Referee's Award) to the separation allowances which they seek in this action.

The plaintiffs have mistakenly analyzed the main issue as one of merely computing the amount of damages. However, the issue of comparable employment is not a question of the amount of damage, but rather involves a threshold question of whether the plaintiffs stated a valid claim.

It is the opinion of this Court that the question of comparable employment is best left to the determination of an arbitrator or an arbitration board, because of the peculiar competency necessary to correctly determine such an issue. Such an intricate and specialized question is better left to experts in the field. It is within this Court's discretion to decline to interpret in such specialized fields. See Transportation-Communication Employees v. Union Pacific Ry. Co., supra; Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946).

In fact, the provisions of Appendix C–1 and the Referee's Award containing the Implementing Agreement provide for such determination by arbitration. Paragraph 12 of the Implementing Agreement states:

> "12. Denial of any claims filed pursuant to this implementing agreement will be handled by the General Chairman directly with the General Manager of CUS. If unresolved within 20 days following the commencement of conferences between the General Chairman and General Manager, either party may proceed to arbitration pursuant to the provisions of Section 11 of Article 1 of Appendix C–1. For the purposes of claims filed pursuant to Appendix C–1 and this implementing agreement, the time limits in existing collective bargaining agreements shall not be applicable."

Thus the issue in the case at bar is best decided by those with the peculiar knowledge involved rather than by a Federal District Court.

Thus the Federal District Court lacks jurisdiction in this case for the following reasons:

1. The Railway Labor Act does not authorize jurisdiction over such disputes;

2. The plaintiffs have failed to exhaust administrative and contractual remedies; and

3. The issues of this controversy are best determined by experts in the field.

Accordingly, it is hereby ordered, adjudged, and decreed that the Defendants' Motion to Dismiss the Complaint is granted.