John MABANE, et al.

v.

METAL MASTERS FOOD SERVICE EQUIPMENT CO., INC., formerly known as Metal Masters Company, Inc., et al.

Civ. No. K–80–973.

United States District Court, D. Maryland.

March 25, 1982.

Fred Kolodner, Baltimore, Md., and Paul D. Gayle, Towson, Md., for plaintiffs.

Ronald J. Levasseur, Towson, Md., for defendant Metal Masters Food Service Equipment Co., Inc.

John H. Price, Jr., and I. Duke Avnet, Baltimore, Md., and George H. Cohen, Mady Gilson and Gary L. Sasso, Washington, D. C., for defendant United Steel Workers of America.

FRANK A. KAUFMAN, Chief Judge.

In this case, instituted on April 8, 1980, plaintiffs, thirty-four former employees of defendant Metal Masters Food Service Equipment Co., Inc. (Company) and former members of defendant United Steelworkers of America, Local 7071 (Union), claim that the Company breached the collective bargaining agreement between itself and the Union executed May 15, 1978, by shutting down the Company's plant in Baltimore, Maryland, and moving to a new plant in Smyrna, Delaware, in October 1978.[1] Plaintiffs also assert that the Company committed an unfair labor practice in failing to bargain with the Union regarding that relocation and its effects, and that the Union breached its duty of fair representation in not taking steps (a) to prevent the Company's breach of the collective bargaining agreement and (b) to represent plaintiffs in bargaining with the Company over the move and its effects.[2]

The Company and the Union have filed motions for summary judgment.[3]

1. Prior to the acquisition of the Delaware facility, the Company's only plant was located in Baltimore.

2. Herein, plaintiffs initially sought class certification presumably under Federal Rule of Civil Procedure 23(b)(3). Because the class was comprised of only forty-seven persons, of whom thirty-four were named parties plaintiff, and because this is not a case in which there is a factual likelihood or even possibility that any presently unknown persons may develop claims similar to those stated herein by those forty-seven persons, this Court determined that numerosity was lacking and that there was no need, in any event, to certify the class. Instead, this Court required notice be given to each of the other thirteen persons advising them of the pendency of this case and of their opportunity individually to intervene as additional parties. Thereafter, none of the thirteen persons sought to intervene.

3. During a motion hearing, the parties agreed to supplement the factual record in this case by submitting additional affidavits and, if any of them so desired, additional memoranda. At said hearing, it was also agreed that the parties would submit a written stipulation of facts regarding which employees had moved to Delaware and which of them who did so move were no longer employed by the Company. That stipulation was never submitted. However, since plaintiffs are not pressing any claims with respect to the employees at the Delaware facility, a fact which plaintiffs affirmed on the record in open Court during said hearing, the facts that would have been contained in such a stipulation are unnecessary to the within decision. This Court afforded the parties the opportunity to submit such a stipulation solely for the purpose of clearing up the record in that regard should the issue have become relevant. The parties seemingly determined not to follow through in that regard.

## FACTS

Until October 1978, the Company, a manufacturer of stainless steel commercial kitchen equipment, operated its only plant in Baltimore, Maryland. At that time, the Company closed its Baltimore plant and moved its operation to a new facility in Smyrna, Delaware. For approximately ten years prior to the time the plant closed its Baltimore operation, the Company had entered into successive collective bargaining agreements with the Union. In the early Spring of 1978, the Union began negotiations with the Company for a new three-year contract to commence on May 15, 1978, the expiration date of the previous three-year contract. Negotiations for the Union were handled by John C. Minis, a staff representative of the United Steelworkers of America, Donald Jefferson, President of the Local, Gene Mitchell, Vice-President of the Local, Rene Johnson, Treasurer of the Local, and John Mabane. Jefferson, Mitchell and Mabane are plaintiffs herein.[3A] A new contract was entered into as of May 15, 1978.

At no time during the negotiation of that May 15, 1978, collective bargaining agreement did the Union have an inkling that the Company intended to shut down the Baltimore plant and relocate. The Union representatives did, however—as was customary for the Steelworkers Union—try to negotiate a provision for severance pay in the event the Baltimore plant closed. That proposal was rejected by the Company.[4]

During early July 1978, the Company became interested in purchasing the Smyrna, Delaware facility. Larry N. McAllister, President of the Company, had been aware of that facility prior to the 1978 Union negotiations, but developed no active interest in purchasing it until after the collective bargaining agreement between the Company and the Union was executed on May 15, 1978.

The Delaware facility had substantial economic advantages over the Baltimore plant: it was larger and better equipped; it had central heating and a sprinkler system, which the Baltimore plant did not; it had a better electrical system; it possessed lower insurance costs; and it presented greater future expansion possibilities. Additionally, advantageous Delaware industrial bonds were available to aid the financing of the acquisition.

The Company purchased the Delaware facility on July 11, 1978. On that same day, the Company posted a notice informing its employees of the purchase and of the Company's intention to begin phasing out operations at the Baltimore plant. The final move was to take place on October 1, 1978. Also on July 11, 1978, McAllister met with Minis, Jefferson and Mitchell of the Union to discuss the relocation, and they asked McAllister to continue the Company's bar-

---

Additional affidavits and an additional memorandum were in fact submitted after the said motion hearing. The parties all agreed during that hearing that, after the record had been so supplemented, this Court could make appropriate determinations on those motions without hearing further from counsel. In addition, in a memorandum addressed to counsel after such additional affidavits and memorandum were filed, this Court specifically asked that counsel advise if any of them desired a hearing. None of counsel responded affirmatively to said memorandum. Accordingly, the within motions for summary judgment are ripe for disposition.

**3A.** Whether the role played by those three plaintiffs in any way affects their claims herein presents a question which need not be reached in this case.

4. The Union representatives did not suggest any contractual undertaking by the Company prohibiting the latter from moving out of the Baltimore area. The contract, as signed, contained a provision that "all of the rights, powers and authority of management are expressly and exclusively retained by the Company, except those specifically abridged or modified by this Agreement" (Article III). Minis, in an affidavit, has stated, *inter alia*, that "based on my general experience as a union negotiator and my familiarity with this company, I would not have expected to succeed in obtaining a clause prohibiting the company from exercising a traditional management prerogative—*i.e.*, to determine where to operate its plant. In fact, . . . the company was unwilling to accept even a standard severance provision, which would intrude much less drastically on the company's managerial discretion."

gaining relationship with the Union and the provisions of the collective bargaining agreement, provided that a majority of the employees elected to work at the new Delaware location. McAllister agreed. In addition, the Union representatives asked, and McAllister agreed, that any transferring employee's seniority rights be honored and that the pension rights due under the collective bargaining agreement to those employees who chose to end their employment be fully respected. The Union representatives, however, made no attempt to secure severance pay, because the Union had failed in an attempt to secure a severance pay provision in connection with the negotiation of the May 15, 1978, collective bargaining agreement and because they (the Union representatives) had no reason to believe that the Union could persuade the Company to grant the severance pay after the Company's decision to move, when the Company had not been willing to do so during the earlier 1978 negotiations. Also, because no union member indicated any dissatisfaction with the date of the move, the Union made no attempt to negotiate a change in that date.

The employees at the Baltimore plant were asked by the Company to state whether or not they desired to work at the Delaware facility and so to indicate on a form which the Company provided. Only five of the forty-seven employees originally expressed an interest in working at the Delaware facility. However, in the end, eleven employees actually relocated. But, because less than a majority of the employees made the move, the Company did not recognize the Union as bargaining agent at the Delaware facility.

Prior to the move to Delaware, no employee filed any grievance or any complaint with the Union about the relocation, either formal or informal. According to Minis, the Union was unaware of the employees' dissatisfaction until the within suit was filed.

■ Plaintiffs assert that subject matter jurisdiction exists pursuant to § 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a). That section provides, in pertinent part, that "[s]uits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." As indicated *supra*, plaintiffs allege that the Company's closing of the Baltimore plant and its move to Delaware breached the collective bargaining agreement. These allegations fall squarely within the language of § 301(a). Accordingly, subject matter jurisdiction is present over those claims.

■ Plaintiffs also allege that the Company failed to bargain with the Union over the move and its effects. Failure to bargain collectively is an unfair labor practice prohibited by the National Labor Relations Act. 29 U.S.C. § 158(a)(5). Exclusive jurisdiction of unfair labor practice claims is vested in the National Labor Relations Board (NLRB).[5] Failure to bargain is an unfair labor practice within the exclusive jurisdiction of the NLRB.[6] Nevertheless, an action which asserts a breach of a collective bargaining agreement resulting in whole or in part from an unfair labor practice may properly be the subject of a suit under § 301.[7] In such a situation, however,

5. *Vaca v. Sipes*, 386 U.S. 171, 178–79, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 785, 3 L.Ed.2d 775 (1959); *Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261, 264–65, 60 S.Ct. 561, 563, 84 L.Ed. 738 (1940); *Sears, Roebuck & Co. v. Solien*, 450 F.2d 353, 355 (8th Cir. 1971), *cert. denied*, 405 U.S. 996, 92 S.Ct. 1252, 31 L.Ed.2d 465 (1972); *Adams v. International Brotherhood of Boilermakers*, 262 F.2d 835, 839 (10th Cir. 1959).

6. *Balc v. United Steelworkers*, 84 L.R.R.M. 2558, 2560 (W.D.Pa.1973), *aff'd*, 503 F.2d 1398 (3d Cir. 1974).

7. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. at 179–80, 87 S.Ct. at 910–911.

a court is limited to determining whether or not the plaintiff is entitled to relief for a breach of the collective bargaining agreement; the court does not have jurisdiction to determine if the action was an unfair labor practice.[8] Accordingly, jurisdiction exists herein over plaintiffs' claims against the Company for breach of the collective bargaining agreement, but not over the failure to bargain claim, except and only to the extent that the same may also be a breach of the collective bargaining agreement.

■ Jurisdiction is also present as to plaintiffs' claims that the Union violated its duty of fair representation. Plaintiffs seemingly contend that the Union breached its duty of fair representation both in connection with the grievance procedure under the collective bargaining agreement and in failing adequately to bargain over the move and its effects. Although that latter claim would appear to be an unfair labor practice as well as a breach of the duty of fair representation, this Court has jurisdiction over both of plaintiffs' said claims. See Vaca v. Sipes, 386 U.S. 171, 182–3, 87 S.Ct. 903, 912–13, 17 L.Ed.2d 842 (1967), in which Justice White concluded that although a breach of the duty of fair representation may also be an unfair labor practice, federal district courts also have jurisdiction over such claims.

In summary, this Court has jurisdiction over all of the breach of duty of fair representation claims against the Union and all of the breach of collective bargaining agreement claims against the Company, but not over the claims that the Company committed any unfair labor practice as such.

## LIMITATIONS

■ The Union asserts that the claim against it is barred by limitations, urging that the applicable limitations period is the six-month limitation for the bringing of unfair labor practice claims before the NLRB. 29 U.S.C. § 160(b). The Union argues that since the alleged breach of the duty of fair representation is also an unfair labor practice, the federal limitations period for bringing unfair labor practice claims should govern. The duty of fair representation, however, is judicially-created, Vaca v. Sipes, supra, and was enforced by the courts for a considerable period of time before the National Labor Relations Board determined in Miranda Fuel Co., 140 N.L.R.B. 181 (1962), that breaches of the duty were also unfair labor practices. Furthermore, in Vaca Justice White indicated strongly that significant policy reasons supported an independent judicial remedy. 386 U.S. at 182–83, 87 S.Ct. at 912–13. To apply, as the Union urges, a short six-month limitations period intended to apply to administrative proceedings to actions by individual union members against their union would undercut the independence of the judicial remedy.

■ The question then arises as to what limitations period is applicable to a § 301 action since there is no federal statute of limitations for § 301 actions for breach of the collective bargaining agreement or for breach of the duty of fair representation. Under those circumstances, federal courts must determine the timeliness of such actions pursuant to federal law by reference to the most appropriate state statute of limitations.[9]

8. *Brown v. Sterling Aluminum Products Corp.*, 365 F.2d 651, 656 (8th Cir. 1966), *cert. denied*, 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105 (1967).

9. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *Howard v. Aluminum Workers*, 589 F.2d 771 (4th Cir. 1978). In *United Parcel Service*, an employee brought suit on a claim which had been the subject of a grievance filed by his union and

had been finally determined against him in a binding arbitration. Since the plaintiff was thus in essence seeking to overturn the arbitrator's decision, the Court held that the applicable limitations period for his § 301 claim was the relevant state's 90-day limitations period for actions to set aside arbitration awards. Maryland has a 90-day limitations period for actions to correct or modify an arbitration award, Md.Cts. & Jud.Proc.Code Ann. § 3–223(a), and a 30-day limitations period for actions to vacate an arbitration award. *Id.*

■ In *Howard v. Aluminum Workers,* 589 F.2d 771 (4th Cir. 1978), then Chief Judge Haynsworth held that claims for breach of the duty of fair representation, standing alone, sound more in tort than in contract. Accordingly, in *Howard* Virginia's tort limitations period was held applicable. In that case, however, Judge Haynsworth also wrote (at 773): "When a fair representation claim is joined with a contract claim against the employer, there are substantial reasons for concluding that the same limitations period should apply since the claims may be closely entwined." Maryland has a single three-year statute of limitations for civil actions generally. Md. Cts. & Jud.Proc.Code Ann. § 5–101. Accordingly, as suggested in *Howard,* that three-year limitations period is hereby held applicable herein. Thus, since the alleged wrongdoings occurred in 1978 and this suit was commenced in 1980, plaintiffs' within action was timely instituted.

### FAIR REPRESENTATION CLAIMS AGAINST THE UNION [10]

[7, 8] A union commits a breach of its duty of fair representation only when it acts arbitrarily, discriminatorily or in bad faith. *Vaca v. Sipes,* 386 U.S. at 190, 87 S.Ct. at 916. A union is entitled to make good faith judgments on behalf of its members. Thus, the mere fact that a union decides not to process a grievance, even a grievance which later turns out to be meritorious, does not without more amount to a breach of the duty of fair representation. *Vaca v. Sipes,* 386 U.S. at 191–94, 87 S.Ct. at 917–18; *Buchanan v. NLRB,* 597 F.2d 388, 394–95 (4th Cir. 1979). "The grievance processes cannot be expected to be error-free." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976), quoted by Justice Rehnquist in *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732, 740 (1981).

In the within case, neither plaintiffs' allegations nor any other part of the record suggest that the Union was motivated by any discriminatory considerations. Furthermore, the uncontroverted declaration of Minis states that he was at no time motivated by bad faith in his actions on behalf of the Union. Since the Minis declaration is uncontroverted and since the lack of bad faith is supported by the entire record, this Court concludes that the Union acted in good faith. Thus, the only question is whether any of the Union's actions were sufficiently arbitrary to rise to the level of a breach of its duty of fair representation.

■ Plaintiffs assert that the Union breached its duty of fair representation by failing adequately to prevent the breach of the collective bargaining agreement by the Company [11] and by failing adequately to

§ 3–224(a)(1). However, since there is no arbitration involved herein, those Maryland statutory provisions appear inapplicable.

10. In certain circumstances, a plaintiff may be required to exhaust internal union remedies before commencing a court action against a union for breach of the duty of fair representation and/or against an employer. *Clayton v. UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). However, "where the internal union appeals procedure cannot result in reactivation of the employee's grievance or an award of the complete relief sought in his § 301 suit, exhaustion will not be required with respect to either the suit against the employer or the suit against the union." *Id.* 451 U.S. at 686, 101 S.Ct. at 2093, 68 L.Ed.2d at 546. In the within case, the Union has no formalized intra-union remedies. Accordingly, such exhaustion would not be required in any event.

11. To the extent that plaintiffs' claims against the Union for breach of its duty of fair representation are connected to the alleged breach by the Company of the collective bargaining agreement, such claims against the Union may, in and of themselves, be barred by plaintiffs' failure to exhaust their contractual remedies. *See Scott v. Anchor Motor Freight, Inc.,* 496 F.2d 276, 279 (6th Cir.), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974). *See also* the discussion at pages 988–990 *infra.* However, the Supreme Court in *Vaca* indicated that because proof of a breach of the duty of fair representation is an exception to the requirement of exhaustion of contractual remedies, "it is obvious that the courts will be compelled to pass upon whether there has been a breach of the duty of fair representation in the context of many § 301 breach-of-contract actions." *Vaca v. Sipes,* 386 U.S. at 186–87, 87 S.Ct. at 914–15. Because of that difficulty, the

represent plaintiffs in bargaining with the Company over the move and its effects. However, the record reveals that no grievance was ever filed by any employee in connection with the Company's decision to move its plant to Delaware. For that reason alone, plaintiffs cannot meritoriously claim that the Union acted arbitrarily in failing to prevent a breach of the collective bargaining agreement because it failed to process grievances.

Additionally, although plaintiffs allege that the Union did not act to enforce the collective bargaining agreement, they have not shown that any such failure was arbitrary. After the Union representatives learned of the announced move to Delaware, they negotiated with the Company regarding the anticipated effects of the move in an attempt to protect the interests of both those employees who chose to move and those who chose not so to do. Minis has stated that no employee complained, either formally or informally, about the way the Union handled those negotiations. Although the Union negotiated about the effects of the move, it did not seek to prevent the move. The May 1978 collective bargaining agreement and the record herein show that the move of the plant was not a violation of the collective bargaining agreement. Accordingly, the failure to resist that move, especially when no grievances by any employee were filed, was not arbitrary.

With regard to plaintiffs' allegation that the Union failed adequately to represent them in bargaining over the move, the Minis affidavit establishes that the Union had no notice, prior to the announcement to the employees, that the Company intended to move. When that announcement was made, the decision to move was a fait accompli. The record shows that the move was motivated by economic considerations unrelated to the labor situation. Indeed, if a majority of the employees at the Baltimore plant had moved to the new Delaware facility, the Company had committed itself to honor the existing collective bargaining agreement at the new location. There is also nothing in the record to suggest that the Union could have offered any concessions which would have induced the Company not to move. Finally, even if the Union had had an opportunity to bargain over the move, it would not necessarily have been arbitrary for the Union to have foregone that opportunity. In sum, the Union's conduct in connection with bargaining over the effects of the move was far from arbitrary.

Even in a summary judgment context, plaintiffs, in order successfully to resist summary judgment, must come forward with some facts indicating that the union acted in bad faith or in a discriminatory or arbitrary manner. *See Rison v. Great Atlantic & Pacific Tea Co.*, 98 L.R.R.M. 2932 (D.Md.1977) (Thomsen, J.). While motivation and state of mind are frequently subjective questions difficult to determine on motions for summary judgment, plaintiffs have not come forward in this case with any Rule 56 materials suggesting any conduct on the part of the Union which constitutes a breach of the Union's duty of fair representation.[12] On this record, the Union

merits of plaintiffs' fair representation claims against the Union are reached herein.

12. Plaintiff Mabane's affidavit does state that a proposal offered by the negotiating committee that the Company would not move its operations from the Baltimore area during the term of the collective bargaining agreement was removed from consideration upon the advice of Minis. Minis, however, denies that such a proposal was ever made. Minis further states that even if such a proposal had been made, he would have advised that it be withdrawn from consideration for two reasons: (1) he (Minis) had no knowledge that the Company might relocate its plant and (2) he (Minis) would not have expected the Company to agree to a provision prohibiting it from exercising what he considered to be a traditional management prerogative of determining where to operate its plant, particularly since the Company had been unwilling to accept even a standard severance provision which would have affected much less drastically the Company's said managerial discretion. Thus, assuming *arguendo* the truth of Mabane's assertion that such a provision was proposed and was withdrawn upon Minis's advice, that does not support a finding that such advice was given arbitrarily or in bad faith.

Mabane has also stated that upon learning of the Company's plans to relocate, he asked Min-

did not breach its duty of fair representation to plaintiffs.

## BREACH OF CONTRACT CLAIMS AGAINST THE COMPANY

■ Plaintiffs contend that the Company's move to Delaware and the failure to bargain with regard to the move breached the collective bargaining agreement. That agreement provides a grievance and arbitration procedure as the exclusive remedy for its breach. Usually, that type of procedure must be resorted to by persons such as plaintiffs before any suit under § 301 may be brought against an employer.[13] For that reason, unless one of the exceptions to the exhaustion requirement discussed below is applicable, plaintiffs' claims against the Company for breaches of the collective bargaining agreement are barred by plaintiffs' failure to exhaust contractual remedies.

■ Where the contractual remedies are "unsatisfactory or unworkable by reason of misconduct of the employer or of the union, exhaustion of those [*i.e.*, contract] remedies is unnecessary." *National Post Office Mail Handlers v. United States Postal Service*, 594 F.2d 988, 991 (4th Cir. 1979) (Winter, J.). In *Vaca v. Sipes, supra*, Justice White identified several such situations in which exhaustion of contractual grievance procedures is not required. One such exception exists when the union has the sole power to invoke the higher stages of the grievance machinery and *wrongfully* refuses to do so. *Id.* 386 U.S. at 185, 87 S.Ct. at 914. In order to prevail on that ground, plaintiffs must show a breach of the duty of fair representation by the Union in processing grievances. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 570–71, 96 S.Ct. at 1059. Since, as this Court has concluded *supra*, the Union did not breach its duty of

fair representation, that first exception is inapplicable herein.

Another exception is present when the conduct of the employer amounts to a repudiation of the contractual grievance procedure. *Vaca v. Sipes*, 386 U.S. at 185, 87 S.Ct. at 914. Since no grievance was ever filed in connection with the Company's move, there is no basis to believe that the Company repudiated or would have repudiated the contractual grievance procedure. Indeed, the record strongly suggests to the contrary. The Company agreed that it would apply the collective bargaining agreement at the new plant if a majority of the employees relocated, indicating that the Company was prepared to adhere to its obligations under the agreement. Accordingly, the "repudiation" type of exception is inapplicable herein.

Still another exception is really a catch-all—exhaustion is not required when resort to the contractual remedy would be "wholly futile." *Glover v. St. Louis—San Francisco Railway Co.*, 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969). In *Glover* plaintiffs alleged that they were denied promotions because of racial discrimination by their union and the employer. In such a circumstance, Justice Black concluded that it would be futile for plaintiffs to submit their claims to the very groups who were charged with discriminating against them, that the requirement of *attempting* to exhaust contractual remedies was satisfied by plaintiffs' repeated complaints to both the company and the union and that plaintiffs would thus not be required uselessly to go through a time-consuming formal procedure.

The only facts which plaintiffs herein have put forward in support of the applicability of the "futility" exception is a state-

---

is what recourse the employees had under the collective bargaining agreement and that Minis told him that nothing could be done under the contract. Although Minis does not recall that conversation, he has said that if Mabane had asked him such a question, he would have told him nothing could be done under the contract because that is what he believed. There is, however, nothing in the record herein to sug-

gest that such advice, if given, was arbitrary or in bad faith. *See also* pages 989–990 *infra*.

**13.** *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Chesapeake & Ohio Railway Co. v. Ford*, 590 F.2d 557, 558 (4th Cir. 1979).

ment in the affidavit of plaintiff Mabane that upon learning of the Company's plans to relocate, he asked Minis what recourse the employees had under the new collective bargaining agreement and that Minis told him (Mabane) that nothing could be done under the contract and did not suggest that Mabane seek legal counsel. Mabane further states that, because he has only a ninth-grade education as contrasted with Minis's having completed college, and because it was Minis's function to advise employees in these matters, he (Mabane) placed great weight upon Minis's advice. Minis stated, as related *supra* at n. 12, that he does not recall such a discussion with Mabane, but that if he (Minis) had been so asked by Mabane, he (Minis) would have said that the contract did not foreclose the Company from relocating its operation because that is what he (Minis) believed to be the case. There is no indication that Minis's said belief was not held in good faith. Even if Minis in good faith did *incorrectly* tell Mabane that nothing could be done because the move was not prohibited by the collective bargaining agreement and Mabane relied upon that erroneous advice, that does not mean that the grievance procedure was unavailable. Mabane or any other plaintiff could still have instituted a grievance. In the within case, not only did no employee file any grievance, but it is uncontroverted that no informal complaints were made to the Union. Plaintiffs did not exert even the slightest efforts to exhaust their contractual remedies.

If plaintiffs had pursued the route of grievance and arbitration, it may be that once the move had been accomplished an arbitration award could not have restored the status quo. But in this case, plaintiffs do not seek an equitable decree restoring the *status quo*. Rather, herein, plaintiffs seek only damages, a remedy which the arbitral process could have provided. Plaintiffs seemingly could have sought arbitra-

tion and also sought a federal court injunction to preserve the status quo pending the outcome of the arbitration. In any event, such difficulties, if any, with remedy do not appear to be what the Supreme Court had in mind when it formulated the "futility" exception to the exhaustion requirement. *Glover* involved a situation in which the contractual remedy was a proceeding before a board selected by the company and the union, between whom, plaintiffs alleged, there existed an active conspiracy to discriminate against the plaintiffs. In *Glover* the Court appeared to indicate that the nature of the process itself was such that plaintiffs, according to their allegations, had no chance of securing any redress. There is no hint in this case that any such situation existed. Therefore, the "wholly futile" exception is not applicable.

In sum, plaintiffs' claims against the Company for breach of the collective bargaining agreement are barred by their failure to exhaust the available contractual remedies. Thus, it is not necessary for this Court to reach the merits of those claims herein.[14]

For all of the reasons discussed *supra*, the Company and the Union are entitled to summary judgment as a matter of law. Judgment to that effect will therefore be entered by an appropriate Order of even date herewith.

---

**14.** However, if this Court were required to reach the merits of those claims, it would, for the reasons set forth on the record in open Court during the motion hearing, see footnote 3 *supra*, and in this opinion, conclude that the Company did not breach the collective bargaining agreement herein.