**Willie L. JORDAN, Plaintiff,**

v.

**LA–Z–BOY EAST and the United Furniture Workers of America, AFL–CIO, Defendants.**

**Civ. A. No. 86–0192–15.**

United States District Court, D. South Carolina, Florence Division.

Sept. 4, 1986.

Stuart W. Snow, Law Office of Richard G. Dusenbury, Florence, S.C., for plaintiff.

E.N. Zeigler, Zeigler, McEachin & Graham, Florence, S.C., for United Furniture Workers.

Finley Clarke, Clarke & Johnson, Florence, S.C., Donald A. Van Suilichem, Clark, Klein & Beaumont, Detroit, Mich., for La-Z-Boy East.

### ORDER

HAMILTON, District Judge.

This is an action brought against an employer under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for an alleged breach of a collective bargaining agreement. Additionally, plaintiff further alleges that the local union, the United Furniture Workers of America, AFL–CIO, breached its duty of fair repre-

sentation by processing a grievance arising out of plaintiff's discharge in an arbitrary manner. The matter is now before the court on the joint motion of the defendants for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Jurisdiction is based on 28 U.S.C. § 1337, and 29 U.S.C. §§ 159, 185.

Plaintiff was employed as a saw helper with the defendant La-Z-Boy East since August 6, 1981. After an initial 60 day waiting period, plaintiff became a member of the defendant union, the United Furniture Workers of America, AFL–CIO, [Local 276]. The terms and conditions of plaintiff's employment were governed by a collective bargaining agreement, most recently entered into on June 5, 1983. The agreement established a procedure for resolution of disputes and included a grievance procedure culminating in binding arbitration.

The instant dispute arises out of plaintiff's discharge on December 4, 1984 for an alleged violation of shop rule D(h) on four consecutive days. Shop rule D(h) provides that a "[f]ailure to notify Management when being absent from work (no later than first rest period on each shift unless employee has a reasonable excuse)" shall be subject to disciplinary action. [*See, Brief in Support of Motion for Summary Judgment on Behalf of United Furniture Workers of America,* Exhibit B]. An exception to this daily call-in requirement is recognized, though, when an employee requests, and is granted, a medical or personal leave of absence. Thus, when an employee has been extended a leave of absence, he is excused from calling in each day.

It is agreed that plaintiff called the plant early in the morning of Monday, November 26, 1984 to report that he was ill and would not be in that day. It is also undisputed that plaintiff did not call in the next four days, November 27 to November 30, 1984. On Monday, December 3, 1984, plaintiff called to advise that he would return to work the next day, December 4. When plaintiff returned on December 4, 1984 he was promptly discharged for violation of the call-in rule.

The union thereafter filed a grievance protesting plaintiff's discharge. This grievance was processed by the union through the first four steps of the grievance procedure. Although the matter was set for an arbitration hearing in August, 1984, the union, upon the recommendation of the union's Executive Board and after the full vote of the entire union membership, withdrew its demand for arbitration. Under the terms of the grievance procedure the employer's denial of the grievance became final upon withdrawal of the arbitration demand.

Plaintiff's defense to the asserted violation of the call-in rule is that he called from his doctor's office a second time on Monday, November 26, 1984 shortly after 10:00 a.m. to advise that he was under a doctor's care and would be out the entire week. Plaintiff does not claim, though, that he actually requested a leave of absence from anyone in the Personnel Department who was authorized to grant such leaves. The employer disputes that plaintiff ever made a second call, and calls the court's attention to the absentee and tardiness log, [*See* Defendants' Brief, Exhibit C], listing only one call from plaintiff.

The alleged breach of the duty of fair representation arises from the union's conduct during the course of the grievance investigation. At some period of time before the union finally voted on whether to take plaintiff's grievance to arbitration, the Chief Steward, Willie Walker, Jr., advised plaintiff he would require additional corroboration concerning the asserted "second phone call" on November 26, 1984. Walker suggested plaintiff attempt to secure a statement from the doctor indicating plaintiff had called his employer. On May 15, 1984, plaintiff got a statement from his doctor indicating that "this will verify that on 11–16 my record shows the above called his job that morning informing them of the situation." [*See Defendants' Brief,* Exhibit D]. Walker investigated the doctor's slip and discovered, by speaking personally

with the doctor, that all the doctor could really say was that plaintiff had asked where the phone was located. The doctor in fact had no first hand knowledge whether plaintiff had even used the phone. Walker stated in his deposition that because the union considered that this slip would not stand up to the rigors of cross-examination at arbitration, and because the union was aware plaintiff had one year previously been discharged for the same offense and had been counseled at reinstatement concerning the application of the daily call-in rule, the union voted to abandon arbitration proceedings in plaintiff's case. [Walker Deposition at 12–16].

In his complaint against the union filed on January 22, 1986 plaintiff alleges that the union's decision to abandon arbitration was not based on a good faith belief that plaintiff's grievance lacked merit, but rather, was made arbitrarily and with reckless disregard to the rights of plaintiff to fair representation. In its answer filed February 18, 1986, the union responds that it performed it duties fully, and that the withdrawal of the arbitration demand was done because plaintiff could not produce evidence of a substantial nature that he had complied with the shop rules. At oral argument of the instant motion, plaintiff's counsel abandoned the claim that the union's handling of the grievance had been done in bad faith or in a discriminatory fashion. Rather, plaintiff's sole contention is that the union's request that plaintiff furnish corroborating evidence of a second phone call required "super proof" of plaintiff, and is evidence of arbitrary treatment accorded plaintiff.

After examining the pleadings, answers to 16(b) interrogatories, and the memoranda of law submitted with the instant motion, including the supporting affidavits, depositions and exhibits, the court is compelled to conclude that plaintiff has failed to come forward with any evidence from which an inference of arbitrary conduct might be drawn. Accordingly, for the reasons set out below no genuine issue remains for trial and summary judgment shall be entered for the defendants.

The "function of a motion for summary judgment is to smoke out if there is any case, i.e., any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time an energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition." *Bland v. Norfolk and Southern Railroad,* 406 F.2d 863, 866 (4th Cir.1969). "Summary judgment may be granted only if it appears from the pleadings, depositions, admissions and affidavits, considered in the light most favorable to the nonmoving party, that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Galindo v. Precision American Corp.,* 754 F.2d 1212 (5th Cir.1985). Summary judgment procedures should be used judiciously, particularly in cases involving issues of motivation or intent. *Douglas v. Anderson,* 656 F.2d 528 (9th Cir.1981). However, a party opposing a summary judgment motion cannot withhold his evidence until trial because of the speculative possibility that a material issue of fact may appear at that time. *See Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 107 (2d Cir.1981); *see also Atlantic States Construction Co. v. Robert E. Lee & Co., Inc. of S.C.,* 406 F.2d 827 (4th Cir.1969).

In *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the leading case involving the union's duty of fair representation, the Court held that a wrongfully discharged employee may bring an action against his employer in the face of a defense of the employee's failure to exhaust contractual remedies, provided that the employee can meet the heavy burden of proving that the union, as bargaining agent, breached its duty of fair representation. *Vaca,* 386 U.S. at 186, 87 S.Ct. at 914. Thus, as was the case in *Vaca,* as a prerequisite to plaintiff's § 301(a) breach of collective bargaining suit against the employer, it is necessary that plaintiff first prove an unfair labor practice by the union, i.e., that the union breached its duty of fair representation.

In defining the parameters of the duty of fair representation the Court in *Vaca* es-

tablished that a breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Id.* at 190, 87 S.Ct. at 916. Rejecting the contention that an individual employee should have an absolute right to have his grievance taken to arbitration, the Court concluded that "a union does not breach its duty of fair representation, and thereby open up a suit by the employee for breach of contract, merely because it settled the grievance short of arbitration." *Id.* at 192, 87 S.Ct. at 918. Importantly, the Court in *Vaca* also made clear that a breach of the duty of fair representation is not established merely by providing proof that the underlying grievance was meritorious, i.e., that the employee was in fact wrongfully discharged. *Id.* at 195, 87 S.Ct. at 919. Under *Vaca* unions are extended significant latitude in the processing of grievances:

> For if a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the union's incentive to settle such grievances short of arbitration would be seriously reduced. The dampening effect on the entire grievance procedure of this reduction of the union's freedom to settle claims in good faith would surely be substantial.

*Id.* at 192–93, 87 S.Ct. at 918.

In *Vaca*, the plaintiff had been discharged because of poor health. Attempting to prove his fitness, the plaintiff presented three notes from doctors stating that he was in good health and that his blood pressure was satisfactory. The company's doctor disagreed and the plaintiff was then discharged. Subsequent to the filing of the plaintiff's grievance, the company requested that the plaintiff submit to another examination. This doctor stated that the plaintiff was not fit for work. Based on this doctor's determination, and despite the plaintiff's doctor's evidence to the contrary, the union dropped the demand for grievance in the fourth stage. *Id.* at 175–76, 87 S.Ct. at 908–09.

In reversing a jury verdict for the plaintiff, the *Vaca* Court found that the union's processing of the grievance into the fourth step and, the union's attempt to gather sufficient evidence to prove the plaintiff's case, as well as other factors, were enough to indicate the union's good faith effort. The Court also held that the plaintiff's proof that he was, in fact, wrongfully discharged was not sufficient evidence to show that the union's decision was arbitrary, discriminatory or in bad faith.

The Fourth Circuit Court of Appeals has also given some interpretation to the "hazy contours of the union's obligations" under the *Vaca* duty of fair representation. *See Griffin v. International Union,* 469 F.2d 181, 182 (4th Cir.1972). Although recognizing that "[a] union may screen grievances and press only those it concludes will justify the expense and time involved in terms of benefiting the membership at large," *id.* at 183 citing *Encina v. Tony Lama Boot Co.,* 448 F.2d 1264 (5th Cir.1971), the court set out the union's duties as:

> First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its members must be exercised in complete faith and honesty. Finally, the union must avoid arbitrary conduct.

*Griffin,* 469 F.2d at 183. In evaluating the union's behavior the court continued:

> While negligence in handling grievances has not been identified as breaching the union's duty of fair representation, the courts have adopted the position that a union may not arbitrarily ignore a meritorious grievance or handle it in a perfunctory manner. Without any hostile motive of discrimination and in complete good faith, a union may nevertheless pursue a course of action or inaction that is so unreasonable and arbitrary as to constitute a violation of the duty of fair representation.

*Id.* [citations omitted]. *See also Wyatt v. Interstate & Ocean Transport Co.,* 623 F.2d 888, 891 (4th Cir.1980) ("[a] union rep-

resentative could be so indifferent to the rights of members or so grossly deficient in his conduct ... that the conduct could be equated with arbitrary action.").

In *Griffin* the court, reviewing a jury verdict for the plaintiff, held that the finding that the union breached it's duty of fair representation in handling plaintiff's discharge grievance was supported by sufficient evidence. Significantly in *Griffin*, however, the court found that the fact that the union insisted on filing the discharge grievance with the same man with whom plaintiff had been involved in the fight leading to his discharge could be viewed as evidence of arbitrary conduct by the union. *Griffin*, 469 F.2d at 184.

■ The present case parallels the situation existing in *Vaca*, and is distinguishable from *Griffin*. As in *Vaca* the union in the present case vigorously processed plaintiff's grievance claim through the first four steps. (Deposition of plaintiff at 50). In fact, plaintiff admitted that other than the union's failure to take his case to arbitration, which he felt he was absolutely entitled to as a dues paying member, he can cite nothing wrong with the union's behavior (*Id.* at 47, 50). Also as in *Vaca*, it is abundantly clear that the union here performed a diligent investigation of the grievance for the first four steps, and only abandoned arbitration when it was obvious, from plaintiff's lack of competent evidence and prior work record, that arbitration would be fruitless. It might have been a different story here had the union simply ignored plaintiff's note from Dr. Brantley [*Defendants' Brief*, Exhibit D], and continued to process the grievance in a blind, perfunctory manner. But here the Chief Steward went further, personally spoke with the doctor to explore the basis for the doctor's note, and only discounted its value after learning it was not based on first hand knowledge. The deposition of Chief Steward Walker compels but one conclusion, that the union, exercising it's reasoned judgment based on the facts amassed during the investigation, determined that the grievance could not be won. (Deposition of Walker at 16, 19, 34, 35). Additionally there has been not a shred of evidence produced that the union was derelict in its duty to conduct a substantial investigation, including having consultations with plaintiff over the merits of his grievance. [Deposition of plaintiff at 15–20], and providing plaintiff ample opportunities to buttress his case. [Deposition of Walker at 12–15].

The present case is dissimilar to *Griffin*, in which the possibility of a successful outcome on the grievance was wholly foreclosed from the start. Here, the union's decision to forego arbitrating plaintiff's grievance was made by recommendation of the Executive Board to the entire union membership [Deposition of Walker at 8, 11, 12]. In making the recommendation, it was the opinion of the Executive Board that the grievance could not be won based on several factors [Deposition of Walker at 12–16]. First, the union considered the fact that plaintiff had been discharged the previous year for the same offense, and the fact that plaintiff could not provide any evidence that he, in fact, requested and was granted leave of absence.[1] Additionally, the union could also weigh the fact that plaintiff had violated other shop rules by leaving work without permission and was spotted in town "cruising" in his car while he was "on sick leave" that week [Deposition of Walker at 27]. Based on the above, it is clear that the union's decision to abandon arbitration cannot be considered arbitrary. Plaintiff cannot even argue that the union's conduct was negligent, let alone that it was "so indifferent or so grossly deficient in their conduct," *see Wyatt*, 623 F.2d at 891.

The court is well aware that issues involving motivation and state of mind are

---

1. In fact, plaintiff admits that he did not actually ever request a leave of absence. [Deposition of plaintiff at 30]. Plaintiff's contention was, however, that the mere statement to the employer that you were under a doctor's care for a week automatically [and apparently, silently] granted the employee a leave of absence. [Deposition of plaintiff at 35]. The above reflects plaintiff's misunderstanding of the application of the shop rule, and could be a factor weighed by the union in evaluating plaintiff's grievance.

frequently subjective issues improper to determine on a motion for summary judgment. However, even at a minimum in such cases, plaintiff must come forward with some Rule 56 material suggesting conduct by the union that could conceivably be construed as arbitrary on some objective scale. *See Mabane v. Metal Masters Food Service Equipment Co.*, 541 F.Supp. 981 (D.Md.1982); *see also Naylor v. American Fed. of Government Employees Local 466*, 580 F.Supp. 137 (W.D.N.C.1983), *aff'd*, 727 F.2d 1103 (4th Cir.1984). Plaintiff has entirely failed to produce one shred of evidence from which the alleged arbitrary conduct could be inferred.

Therefore, based on the foregoing reasons and authorities, the defendants' motion for summary judgment[2] is hereby granted, Rule 56 Fed.R.Civ.P.

---

**2.** The defendants' motion is styled a "Motion for Summary Judgment and Motion To Dismiss." Because the court has gone beyond the pleadings in resolving the matters raised herein, the entire motion was, upon consent of all counsel, treated as one for summary judgment. See Rule 12(c), Fed.R.Civ.P.